Good morning, Your Honors. May it please the Court, Taras Kik, on behalf of Appellant and Plaintiff Winesa Cole. Mr. Kik? Your Honors, tellingly, Appellee opens its Respondent's Brief by advocating an alternative argument, other than the one which is the basis of the trial court's, the District Court's, order. But I'd like to focus first, before getting to that, on the basis of the District Court's order. The District Court... Well, let me ask a couple of things. Certainly. I've had some background in public utility regulation, and I always thought the filed rate doctrine prevailed and was a bar to the world, as long as the utility has, or in this case, the insurance company, has filed the rate in the proper manner in which the State provides for such filing. That's notice to the world. What am I missing? Your Honor is largely correct to the extent that it is an absolutely unwaivable term read into every contract. So if the filing entity is an insurer, its filed rates with the California Department of Insurance, the CDI, are read into any contract. An insurer, then, is not allowed to violate its filed rate. However, what it does not impute is some sort of automatic constructive notice. That has never been the law. There's been no deception to delay discovery because there is a filed rate. There is the potential for constructive notice. But this is where the District Court, frankly, took a very wrong turn in eliminating one of the two prongs that California law has been consistent on for over 100 years, which is that a reasonable person has first to be put on inquiry notice. They need a suspicion of the fact that they've been wrong. Once that suspicion arises, then, indeed, the existence of a public record can impute the knowledge to them, even though they've not actually read the public record. But never in California is someone imputed with constructive knowledge without the predicate of having grounds or suspicion to have to go and inquire. And what the District Court did, which really is quite radical, is it stated, in this case, Plaintiff had constructive knowledge of the defendant's filed rates as they were available to the public. That's at page 23 of the record, of the joint excerpt of the record. OK, what's your best authority for the proposition that that is not a proper reading of the law? Well, we start with the California Supreme Court in 1898 with Tart v. Bingham, which says, Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances a prudent man would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. Was that a file rate kind of case? No. Well, that was a case, I believe, involving a shipper, which, no, Your Honor, that was not a file rate case, that one. But what's your best case for what you're trying to persuade us about here today, and that is that the fact that the insurance company has published its rates with the appropriate state agency is not a bar to knowledge? Your Honor, it's a line of uncontradicted, consistent California Supreme Court cases. Tart goes on, The circumstances must be such that the inquiry That's a very generic kind of case. I'm looking for a case that involves the filing of a rate with a state agency. It could be utility, it could be insurance. What's your best case in that area? There's the Mulder case, which we cite, M-U-E-L-D-E-R, where there was a file rate with the public commission. And in that case, there was a limit of liability for a lost item of about $50. And in that case, not only was the court's judgment for an excess of $7,000, it was a lost briefcase that a professor had lost on a bus. But the plaintiff had actually been handed the ticket with a disclaimer on it stating that there is a limit of liability of $50. And it was a tariff, it was a filed rate, and there was no imputed knowledge of that fact. But this is not an outlier. This is simply consistent with a long line of cases. Broberg is an insurance case. We cite that as well. In Broberg, the plaintiff waited over 13 years before filing a cause of action. And that's a filed rate case, but it's an insurance policy. The policy was a life insurance policy, a vanishing premium policy, which was filed with the Department of Insurance. The plaintiff entered into a contract in 1993 to purchase it based on representations that the policy would pay for itself after 11 years. More than 13 years later, he filed suit. The actual policy he'd been handed stated expressly, your premiums will continue as long as insurance is in effect. They're not going to disappear, and there were other disclaimers as well on it. All right, let me ask another question about privity here. This is a claim by the cell phone owner against Hartford, but the cell phone owner never had a policy with Hartford. As I understand it, the policy was between Hartford and T-Mobile. Do I have that right? No, Your Honor, that's actually not right. If we look at the joint excerpt of records at page 309, although Hartford argues this, the truth is that Hartford was the named insured under the master policy. But every subscriber was expressly named as an additional named insured. And Hartford's 2001 rate filing, to which I was referring at page 309, specifically states as follows. This coverage form is designed to be issued to a cell phone company and provides the opportunity for the cell phone owner to subscribe to insurance coverage under that policy. The individual subscribers are treated as additional insureds with full rights under the policy. Further, if you examine... So T-Mobile, in effect, is the agent of Hartford? Is that how we get privity? Yes. And not just the agent for privity, but there's an actually expressed term in the policy that says the subscribers are named additional insureds. So it's more than just through agency. In fact, if you look at JER page 86, it specifically states what is covered. One wireless phone or device associated with your T-Mobile account. And at page 105 of the record, it specifically excludes anything that T-Mobile owns. It says property not covered. The policy does not cover property held in inventory or stock in trade. Correct. Can you address their merits argument? Yes, Your Honor, I can. Their merits argument is simply incorrect. The filed rate with the Department of Insurance for this policy was a monthly rate of $2.13. As Your Honor just stated, the filed rates are indeed read into a contract, but in the sense that they become a term of the contract not to be violated. So they were allowed to charge $2.13. Instead, they charged $3.99. That is a violation of the rate they filed with the CDI. It's actually stronger than that as well, because they make an argument... that was just the expense that was imposed by the agent for collection and administrative expenses. Your Honor, we are relying on TROIT, but we're also relying on what's part of the record at 0323, which is their actual filed rate. It's a questionnaire that the CDI required to be filed with it as part of this insurance program. Question number three asks, indicate if there are policy fees for this program. They check the box, no. Question number four asks, list any other miscellaneous fees that are applied. Explain the purpose of the fees. They typed in the word none. All they were allowed to charge was the $2.13 for the actual filed rate. Now, Your Honor asked me about TROIT. TROIT was decided under section 381 of the insurance code, which uses the term premium. Our claim, and that's strong enough, there's no reason to think that a court would hold otherwise under insurance code 1861.05, which is the insurance code we refer to. But if one were to actually look at the language in 1861.05, it's actually all the stronger than in TROIT, because rather than use the term premium, it states every insurer which desires to change any rate shall file a complete rate application with the commissioner, and they can't charge it until it's approved by the commissioner. That's a rate. They filed a rate of $2.13, and then on record 323, they indicated there are no additional fees associated with it, and they violated that filing. But we have to assume that the administrative fees collected by a third party, I guess, I've forgotten the name of the entity, a Syrian, are deemed to be what's charged by Hartford. Isn't that a necessary step? That's the necessary step, and it's also the law. That's in TROIT. That's in also the California Code of Regulations, which states that expressly. And it's also in the opinion of the California Insurance Commissioner, which we attach stating, by charging fees in addition to the premium, which American Reliable is entitled to charge, they constructively charge and collect the premium in excess of the premium permitted under the rate. That was through someone that they had designated as an agent. And the California Department of Insurance said, no, you can't do that. That's your agent. And the policy reasons behind it being that that is supposed to be something which ought to be calculated and considered when making your rate filing. The cost of billing and so forth are part of the premium, and there's an explanation of that. The California Code of Regulations section that I wanted to refer your Honor to, I just found it, is 2360.0 subsection C. And it states, the term premium shall include the final amount charged to an insurer for insurance after applying all discounts, surcharges, fees charged by the insurer, and all other items which change the amount the insurer charges to the insured. Counsel, on the unfair competition issue, we have a case called R.E.A.A.R.Y.E.H., which is in front of the California Supreme Court. A review was granted in October. Do you have a recommendation to us? Should we wait until that's decided, or what? Your Honor, our recommendation, which is buried in the footnote at the very end of our reply, is to not wait and just allow the district court to follow whatever the California Supreme Court decides in that. Currently at the California, and I'd like to reserve two minutes if I may, so if I'm done. We're down to a minute and a half. Okay, so I'll sit down. There are two appellate courts that say there is tolling. There's one appellate court that says there isn't. Your Honor's correct. That's before the California Supreme Court right now, but we don't want to delay it. We'd rather send it. All right, got it. You may save the rest of your time. Thank you, Your Honor. We'll hear from the company. Good morning. Paul Kane for the Hartford Entities. Okay. May it please the Court, I think I can greatly simplify this. The case can be resolved on a very narrow ground without reaching any controversial proposition of law of the kind that counsel was referring to. All the court needs to do is juxtapose one page of the record against what counsel said in his reply brief. What's that one page? It's page 102 of the joint excerpts of record. That's the program brochure that T-Mobile sent to Ms. Cole and its other subscribers. Plaintiff's briefs totally ignored that document. Counsel, in his argument, totally ignored that document. Plaintiff, Ms. Cole admitted that when she bought her phone, she was handed the brochure, page 102, and indeed that the salesperson specifically pointed to the part of that page in which the premium was set for. I have that page in front of me. What should I be looking for? I believe it's in the upper right-hand corner of the page, Your Honor. And what does it say there? It told Ms. Cole that she would pay $3.99 a month. Right. And it said that that figure had two components. First, it had a component, an insurance premium payable to the Hartford. Oh, and the administration fees? And there's a fee for administrative services to Assurian. You know, Assurian ran a call center. It took responsibility for getting a replacement cell phone into the subscriber's hands if there were to be a claim, and that's what that second piece was for. But how does that inform her that it was beyond what had been filed with the California Insurance Commission? It's juxtaposed that document against what plaintiffs have said in their reply brief at pages 2 through 11. Isn't there a question then as to whether that complies with what was filed with the Insurance Commission? I think that's exactly my point. What they say at pages 2 through 11 of their reply brief is that it's illegal to have a fee for administrative services. For example, at page 5, they say administrative fees cannot be charged. Now, we don't agree with that. We think that an administrative fee payable to somebody else is not the same thing as an insurance premium payable to the insurer. But let's assume that he's right about that. Let's assume that he's right that administrative fees cannot be charged. When plaintiff received the brochure on April 19, 2004, the plaintiff knew, or at a minimum she was on inquiry notice and that's all that's required, that the $3.99 figure was higher than the Hartford's insurance premium and that there were the administrative charges that counsel now says can't be imposed. I'm not understanding that. The question is not whether the administrative fees can or can't be charged, but what was on file with the insurance department. And if they asked for the inclusion of those fees as part of the premium, then she wasn't put on notice no matter what it said in the brochure, or at least that's their argument, is that there's no reason to suspect that this presentation of fees plus premium is in violation of what was on file. Well, what we're talking about here is inquiry notice. You can't sit back and wait for the facts to find you. The cases say you have to go out and find the facts. So are you agreeing that you can't charge administrative fees above a premium, so that in seeing that she should have known that that was unlawful? No, my argument is that they can't have it both ways. We think that an administrative fee to a third party for services rendered by the third party that don't have anything to do with the underwriting are not called for and needn't be part of the file rate. But let's assume that he's right. Well, if he's right, then what was presented was not what was on file and was unlawful because the insurance company didn't express that the actual fee was going to be the higher 399 amount. So in that case, she receives the brochure and all it says is that there are two pieces to it, but I'm not sure why that would put someone on notice that that was not what you had on file. Well, again, we're talking about inquiry notice. I think the insurer's rate reflects insurance. The insurer's rate reflects the premium that is being paid. I think when anyone receives that document, they're going to say there's an insurance fee and there's an administrative fee. They say there can't be administrative fees, but I think on inquiry notice, once you see that there's a very administrative fee that they say now can't be charged, I think it's a pretty tortured reading of page 102 to suggest that notwithstanding the administrative fee, this was the kind of arrangement that they now say would have been lawful if it had been somehow boiled into the filed rate. Well, this is a statute of limitations issue here, and the question is whether someone's, and I gather California law is quite permissive in this area. I was quite surprised to see how liberal it really is. But what's your response or your comment on my inquiry about the filed rate doctrine? Does that have any relevance here at all? I think it does, and I think that's what the district court principally relied on. The district court said the plaintiff had failed to plead facts sufficient to get around the fact that the filed rate was out there for anyone to see. What I'm proposing here is an alternative ground, a narrower ground, that would lead to affirmance based solely on just that one page of the record, which the plaintiff said they were talking about. Which the trial court really didn't rely upon in her opinion. That's correct. I'm proposing an alternative ground for affirmance. Well, there's a good reason for it, because the complaint goes on and on and on about all the facts. I mean, it pleads all kinds of facts, so you just about have to find an alternative ground, don't you? Well, I agree with Judge Scanlon's point that the filed rate itself in the insurance context puts persons on inquiry notice. Post Prop 103 here, the insurance rate-setting process has been taken out of the smoke-filled room, and the consumers are integral parts of it. So I think filed rates do put consumers on inquiry notice. Okay, but you have to address the argument made by your opposing counsel, and that is that California law is maybe sui generis, but apparently there's enough history that allows someone who should be bound by the filed rate doctrine to not have to endure it until that person has reason to believe that they should look. And I suggest that page 102 does that. You know, the plaintiff says, hey, I'm not a lawyer, I received that document, sure, and the salesperson pointed it out to the rate, sure. But I saw facts, but I'm not a lawyer. I don't understand what significance to attach to those facts. But in fact, the California Supreme Court is very rigorous on this point. Well, put that aside for just a moment. What about these California cases? Do you concede that the discovery rule in California is really quite permissive? It can be in some context. I think in the regulated industry context, Indian Wells was a water fee. Boatwright was a political appointee's filing. As your initial question, Judge O'Scanlan, indicated, I think filed rates in the insurance context are different and are a proper subject of inquiry notice without more. I was looking for an insurance case which would support the district court's assumption or conclusion that there was, in essence, a per se rule, that as a matter of law, if the rate is a public filed rate, then the world is put on notice. But I didn't see that case. And so the panoply of cases were all over the map. Some supported your position, some supported theirs. But I didn't see that per se rule. And so we're left with saying there's no per se rule. Why should we find a per se rule, which is what we would have to do to support the district court's specific ruling? I think what the district court said is we're talking about an exception to limitations here. The plaintiff has to plead a way to get around the limitations period, and that here, given the filed rate, the plaintiff had not done so. But alternatively, I'm saying that given the disclosure that was made, that was admitted to have been received, page 102, at a minimum she was on inquiry notice then. The cases that counsel relies on all are cases that say, well, maybe there was an inquiry notice here because in addition to whatever the defendant was relying on, there wasn't the something else to put, whether it be a rate or something in a book somewhere. There wasn't something else to call the plaintiff's attention to that thing that was on file. Here I'm suggesting that page 102 is that something else, and that coupled with the filed rate, 102 should have been enough to require the plaintiff to then look at the filed rate to see whether what she was being given comported. Isn't there a question still as to whether or not the filed rate encompasses the 399 or just the 213? Sitting here, I don't know that one way or the other. The plaintiff has never contended that, if I'm understanding your question right, the plaintiff has never contended that the Hartford got anything other than the 213. They're not contending that the Hartford was enriched in any way. But I heard them saying that the amounts gotten by a Syrian as a matter of law or as regulation is read into the premium. Is that incorrect? I think that's disputed. I think that's the issue on the merits, but our position is they can't have it both ways. If they are right about that, the page 102 should have triggered, comprised the inquiry notice that required them to look into it. Why isn't all this just a fact question? In other words, to support the district court's ruling, we would have to say as a matter of law that the statute of limitations has passed, and all of these factual questions are irrelevant. Well, I don't think there is a factual question because the plaintiff admitted that she was specifically directed to the premium and what the components were. So you're saying your position, if I'm understanding, or your alternative position, is that as a matter of law, the wording of the brochure is enough to put a person on inquiry notice and so, therefore, the statute of limitations has passed. Is that correct? That's correct. We have to remember that the limitations, the whole purpose of limitations, in part, is repose. And if a plaintiff can admit receiving a document like that and having her attention called to the key provision of it and say, yeah, but I get to go to a jury trial, extensive jury trial, and argue about what that means, then there's very little repose here. But even if they're put on inquiry notice, though, that isn't the end of it, as I understand it under California law. I think it is the end of it because if they're on inquiry notice, they need to go look at the filed rate and compare one to the other and say, hey. But there's a question then under looking at the filed rate, given what you have to go through in order to look at the filed rate, as to whether a reasonable person could even do that, given all that's pled, even in the complaint.  California's even got a discovery notice model instruction for the court. And so you still have to go through that, even if there was inquiry notice. And the question is whether the inquiry notice can be met by going through all the stuff you have to go through with the Department of Insurance to find that filed rate. I don't agree with that, Your Honor. But once you're on inquiry notice, there's no contention here that the Hartford's filings were not accessible to every member of the public, just as the law requires. I think that's a jury question. I don't know how it can be a jury question to say that a document on file, pursuant to the exact procedure that the state has prescribed, is not sufficiently available to the public to be read. I think once you're on inquiry notice, you've got to look. And the filing was there for anybody to see. Do you agree with counsel that the additional insurance solves the privity problem? I don't think. Or at least that T-Mobile is an agent, so there's no concern. They recite that T-Mobile is an agent, and I agree that they did recite that. But, again, we have a fee being paid in two directions, one to the insurer, one to assure in to provide services. We don't contend they lack standing. There's a lot of discussion about standing. We've never contended they have standing. Our position is that when they receive what they received, they can't claim an exception to limitations. I mean, the logical extreme of their position would be that 10, 20, 30 years from now, if they can find a plaintiff who says, gee, I didn't know, that they can litigate years, possibly decades after the fact, something that was not just available on a public record from day one, but also separately and independently disclosed in the brochure that's at page 102. Well, they'd have to convince the jury that that plaintiff was reasonable. That would be the rest of it. Agreed. Going to trial doesn't necessarily mean you're going to win. But the purpose of limitations in part is repose, and there's very little repose if decades after the fact you have to be trying to resurrect what happened and who knew what went. Do you have a view on the ARIA case? I think this Court's – you don't reach the question of the UCL if you accept my argument, because all their claims are barred. Just for the sake of discussion, suppose we don't accept your argument. Should we wait for ARIA or not? This Court has a prior precedent on that, the Carl Storys case, and I think the 285, F3rd, 848. And I think this panel should follow what this Court earlier decided. Which is what? Which is that there's no delayed discovery rule in the UCL case. Okay. Anything further? I think I have one second left, so no thank you. Thank you, counsel. Mr. Kick, you have some reserve time. Thank you, Your Honors. I'll try not to talk too fast, but I don't want to overstay my welcome. What about this page 102? Okay. Page 102 is the brochure. That's the brochure that the store gave her that said – Which specifically says premium and administrative costs. Right. So what's your response? Well, it says $399. If they had filed with the California Department of Insurance a premium for $399 or – No, no, no. I think you misunderstand his argument. His argument is that it was a disclosure that it was not just the premium that goes to Hartford, but that an additional amount that presumably goes to Assurian. Right. I understand, Your Honor. So $399 is not necessarily the insurance premium, right? Your Honor, that argument goes nowhere because that would, again, involve some kind of automatic imputation to the reasonable person making the purchase that that $399 rate is not as filed with the California Department of Insurance. They said your rate's going to be $399. Some of it will go to Assurian for its services. You can't contract around the law. The law is that they have to charge the $2.13. And on form number 323, they said there would be no additional charges. Well, his point is that they were informing your client that they were violating the law. Here's the rate we have on file, and now we're going to charge you something over. So at the point where she sees that, she should know, well, they're admitting to a violation of law, at least on inquiry notice.  It's a statement that the rate is $3.99, and part of it's going to include fees for service. Under Civil Code Section 3548, the party is allowed to presume lawful conduct by the other party. Civil Code Section 3548, there's nothing that puts a person on inquiry notice that that $3.99 rate, because part of it is going to Assurian, is a violation of the filed rates. But here's what it says. The fee includes the cost of the insurance premium paid to Hartford and administrative fees payable to Assurian. Yes. There's a segregation there. There absolutely is. So only part of it is Hartford's premium. The rest goes somewhere else. Well, first of all, presumptively under California law that we cite, it's all a premium being collected by the insurer. That's the Troit case. That's the California Code of Regulations I cited, and that's the CDI opinion letter. So although the brochure states that, that is not by operation of the law what is happening. Furthermore, counsel made a statement that we don't plead on just enrichment. In other words, you're telling me there's a statute or a case that says that notwithstanding this recital in the dispositive brochure, that everything that the $3.99 is presumed to be insurance premium? Yes. What case says that or what's that? Let me retract that because I interrupted, Your Honor, before you were done with the question. No. What the case law says is you can only charge your filed rate. If they were going to charge an additional charge for services, it would have had to have been filed. You can't put it in a brochure and make it legal. It has to be filed with the California Department of Insurance. The service charge is considered part of the premium. The cases that expound on that explain it because an insurer doesn't have the option of avoiding the charge. Even when that administrative charge goes to a different company? By presumption of law, it doesn't. It's an agent-collecting. And Troy and the other cases we cited in that regard. Is that in your brief someplace? Yes, it is, Your Honor. Give me the cite to it, please. I would need to get the the pages. But the discussion is, is this in the blue brief? Yeah, it's in the reply brief. Oh, the reply brief? Yeah, it's in the reply brief when this was raised. Well, counsel, why don't we... I can submit a one-page letter brief directing the court's attention to that. Let's do that. Within the next seven days, please send three copies to the district court clerk, who is right here, and the deputy clerk, who is right here, and serve your opponent. We'll do that in the next seven days. With reference to the specific point you're making right now, which is that there is a presumption of law which overcomes that disclosure in the brochure. We'll do that, Your Honor. For the sake of closing the circle on that, had they filed that rate, they would have been allowed to charge it. Had they filed a service charge of $1.83 with the CDI, we would have no problem with that, and the law would allow it. Excuse me. In the filing that they make with the Department of Insurance, does it indicate this is the premium, this is the service charge, or is it all indicated to be the premium? It's all indicated to be the premium, and according to document 323, my favorite document, it specifically disallows any additional charges, like they're saying we're going to go to Assyrian for services related to the policy. Their filing specifically says this is not going to happen, and their brochure says it is going to happen. Counselor, just so I understand, what is this document 303? It's 323, excuse me. Yes. Is that 323 of the record? It is in the record. That's from the joint excerpt of the record. What page? 323. Oh, that's what it is. Yes. Very well. And it's the Hartford filing with the California Department of Insurance whether they're going to charge these fees that they're charging, and it really is dispositive. Thank you very much, Counsel. Thank you. Your time has expired. Certainly. Seven days afterward, you can reply. We'll put that in. Your Honor, I was only going to direct the Court's attention to where we cited that in the brief rather than write a new brief, so I'm not sure should I now do something other than just refer the Court's attention to where we previously argued this, if Counsel is replying? If you can find that reference right now, we can dispense of any supplemental filings either by you or by the other side. We'll give you 30 seconds. All we're asking is what page of your reply brief do you discuss this? Okay, pages 2 and 3 of the reply brief as well as pages 2 through 4 of the reply brief. Very well. The need for any supplemental filings is now abrogated. The case just argued will be submitted, and the Court will adjourn. Thank you, Your Honor. All rise. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor.
judges: Piersol, O'scannlain, Ikuta